UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEIONTA HAGENS,

      PLAINTIFF,

v.

CORRECTIONS CORPORATION OF
AMERICA, et al.,

      DEFENDANTS.

**RECEIVED**

JUN 2 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Civil Action No. 1:05-CV-01917
(CKK)

## PLAINTIFF'S ADDENDUM TO: MOTION TO OPPOSE SUMMARY JUDGMENT

The plaintiff, KEIONTA HAGENS, PRO SE, respectfully petitions this HONORABLE Court to accept for filing this addendum to the previously filed "motion to oppose summary Judgment", due to extraordinary circumstances, beyond the control of the plaintiff, and in support whereof states the below:

1.) On or about, February 14, 2006, the plaintiff received a copy of the Defendant's motion to dismiss, or, in the alternative for summary judgment.

2.) On February 16, 2006, the plaintiff was assaulted by Inmate Vennell Jeffries, #40452-037, and placed in the Special Housing Unit, for defending himself.

3.) On March 13, 2006, Inmate Donald Hatch, Reg. No. 11999-007, as next friend mailed a letter to the Court detailing the disability that the plaintiff suffered in 24-hour lockdown in a cell.

4.) On March 20, 2006, Inmate Hatch mailed another letter to the Court, since the March 13, letter had been misinterpreted. Inmate Hatch being aware that plaintiff was not knowledgeable in the law and unable to respond

. . . to the motion to dismiss, without assistance, requested therein that the proceedings be stayed "on any other relief you deem to be fair and equitable." ( A copy of the March 20, 2006, letter, is in the appendix as Exhibit A).

5.) On May 24, 2006, the inmate who had assisted plaintiff in prior filings, the above-mentioned, Jennell Jeffries, mailed a request for extension of time to respond to the court.

6.) At some point, Mr. Jeffries, mailed the motion in opposition to the court, without plaintiff's knowledge, or consent, the motion was not on point to the issue raised in Defendant's

---

[1] Mr. Jeffries claimed to have filed 95% of every motion herein ( motion for extension of time) and the whole lawsuit ( motion to oppose summary judgment) and avers that plaintiff is "illiterate inmate. Plaintiff requests that the exhibits filed with the opposition motion remain in the record against motion to dismiss filed by the District of Columbia.

motion to dismiss, on, for summary judg-
ment. Plaintiff avers that Inmate
Jeffries intentionally sabotaged
the opposition motion, in order to
retaliate against plaintiff due to
animosity from the incident where
plaintiff defended himself against
the attack of Inmate Jeffries.

7.) Subsequently, in an order of
June 1, 2006, this Court granted
plaintiff an extension of time
to file an opposition motion until
July 7, 2006.

8.) Plaintiff was without any
of his legal property, the majority
of the time in the Special Housing
Unit, having staff confiscate all
legal property on at least four
different occasions. Additionally,
the law library in the Special
Housing Unit is woefully inadequate

... even if plaintiff possessed the skills and knowledge to fashion motions.

9.) The plaintiff was released from the Special Housing Unit (hereinafter, SHU) on June 15, 2006, and is assisted by another inmate in this filing.

10.) Plaintiff respectfully requests that the court accept this supplemental pleading, pursuant to Fed. R. Civ. Proc. Rule 15 (a), that the previously-filed unauthorized opposition motion be stricken from the record, and/or that the court accept this pleading as timely filed pursuant to the June 1, 2006, order of the court. Plaintiff is a layman proceeding PRO SE, and requests that the court liberally construe this motion to request any other relief the court deems to be fair and equitable.

-5-

Haines v. Kenner, 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); Razzoli v. Federal Bureau of Prisons, 230 F. 3d 371 (D.C. Cir. 2000); Holly v. Department of Veteran Affairs, 165 F. 3d 214 (3rd Cir. 1999). In any event, plaintiff prays that the Court not allow the vindictive retaliatory tactics of Inmate Jeffries to cause an innocent party harm. Plaintiff is and has been, at all times relevant to this action, incarcerated, and unable to seek consent before the filing of the instant motion.

### A. THE PLAINTIFF DID EXHAUST ADMINISTRATIVE REMEDIES

Contrary to the Defendant's allegations, plaintiff did exhaust the administrative remedies available

... under the circumstances of this case, the plaintiff filed grievances concerning the incident that forms the basis of the complaint herein, and was transferred from the custody of defendant, CCA, before having access to the needed grievance forms to appeal the responses provided by defendants.

1.) On May 17, 2004, plaintiff submitted a grievance form concerning being assaulted by defendants, London and Mayes. (copy in Appendix as exhibit B). It should be noted that defendants previously submitted a copy of Exhibit B, in a prior filing as "Exhibit B."

2.) Although inartfully drafted, plaintiff submitted another grievance form on May 23, 2004, detailing the use of excessive force by Capt. London and Capt. Mayes. (copy in Appendix, as Exhibit C).

3.) Additionally, plaintiff filed a grievance concerning property that was unjustly confiscated by Capt London and Capt. Mayes. (copy in appendix, as Exhibit D). In a memorandum of May 25, 2004, Ms. Barbara Hart, Contract Monitor, verified resolving the claim with the provision of Fifty-Dollars ($50,00) of commissary to plaintiff. (copy in appendix, as Exhibit E).

4.) In a memorandum of June 3, 2004, Ms. Hart, informed that the "Internal Affairs" was in the process of investigating the allegations of use of [excessive] force. (copy of June 3, 2004, memorandum in appendix as Exhibit F).

5.) On June 4, 2004, Ms. Hart submitted another memorandum and informed plaintiff that Warden Figueroa imposed "corrective/adverse action against Capt. London", as a result of the investigation of Internal Affairs.

(copy of June 4, 2004, memorandum is Appendix, as Exhibit G).

6.) After plaintiff arrived at USP-Big Sandy, in Inez, KY., post June 4, 2004, plaintiff received a copy the memorandum prepared from Internal Affairs Investigation, Don Paul. As the Court can readily see by Exhibit H (copy of June 1, 2004, memorandum by Don Paul) the investigation substantuated the allegations in the complaint.

7.) The plaintiff sought to appeal the response to a higher authority due to the nature of the response, however the Internal Affairs investigation had verified all that plaintiff had alleged and there was no other viable remedy.

B. PLAINTIFF WAS NOT OBLIGATED TO EXHAUST ADMINISYRATIVE REMEDIES

The plaintiff avers that the administrative remedies were exhausted herein, however, even if they had not been the plaintiff could still proceed with the suit herein.

The plaintiff had submitted several informal grievance forms concerning the incident and these sufficed to exhaust remedies. Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999) (exhaustion requirement fulfilled by informally written complaints because prison officials were aware of prisoner's situation). Additionally, CCA officials had deemed the investigation to have been closed with the Internal Affairs memorandum of June 1, 2004.

Williams v. Norris, 176 F.3d 1089, 1090 (8th Cir. 1999) (inmate has

"exhausted administrative remedies for purposes of section 1983 claim when prison has denied grievance at time of court's ruling).

Finally, courts have held that administrative remedies do not need to be exhausted when plaintiffs seek monetary damages. See: Wright v. Hollingsworth, 201 F.3d 663, 665 (5ᵗʰ Cir. 2000), Rumbles v. Hill, 182 F.3d 1064, 1069 (9ᵗʰ Cir. 1999).

## RELIEF

WHEREFORE, due to the above, and for any other reason(s) that may appear to the court, the plaintiff, Keionta Hagens, pro se, respectfully requests that the court deny the defendant's motion to dismiss, or, in the alternative for summary judgment.

in the Alternative, Request that the Court grant Summary Judgment for the plaintiff, or to dismiss the complaint without prejudice to plaintiff filing, at a later date, a complaint concerning the incident complained of herein.

It is obvious that the affidavit of Joyce Allen (Deft. Exhibit #1) is false and the issues are in dispute. Plaintiff's signature on the grievance form (Deft's Exhibit B) on indicates that plaintiff had received a copy of the response. There is no indication that plaintiff did not wish to appeal, and as stated above, the June 3, and June 4, memorandums established the culpability of the defendants, and the sanctions imposed. There existed no viable reason to appeal a favorable result.

## CONCLUSION

Summary Judgment is only appropriate when no genuine issue of material fact exists. Super. Ct. Civ. R. 56(c). See, e.g. Sullivan v. Heritage Foundation,

399 A.2d 856, 859 (D.C. 1979); Bennett v. Kiggins, D.C. App., 377 A.2d 57, 59 (1977), cert. denied, 434 U.S. 1034, 54 L. Ed. 2d 782, 98 S. Ct. 768 (1978). The Court must be assured that no issue of material fact exists and also that the moving party is legally entitled to the judgment. Turner v. American Motors Corp., D.C. App., 392 A.2d 1005, 1006 (1978). A moving party has the burden of proving there is no issue of material fact, and all inferences which may be drawn from subsidiary facts are to be resolved against the movant. Willis v. Cheek, D.C. App., 387 A.2d 716, 719 (1978).

The Court should grant the relief sought herein and order a trial in the matter.

Respectfully submitted,

Keionta Hagens

Keionta Hagens, Pro Se
Reg. No. 31585-007
USP-Big Sandy
P.O. Box 2068
Inez, KY 41224


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing Addendum on the below-listed persons entitled to receive a copy thereof, by U.S. mail, postage prepaid, this 20th day of June, 2006.

Kelvin Newsome, Esq.
deClair Ryan, P.C.
225 Reinekinson., Suite 700
Alexandria, VA 22314

Daniel Struck, Esq.
Jones, Skelton & Hochuli, P.C.
8801 North Central Ave.,
Suite 800
Phonix, Arizona 85012

Keionta Hagens

Keionta Hagens, Pro Se
Reg. No. 31585-007

Executed this 20th day of June, 2006, at Inez, KY, pursuant to 28 U.S.C. Section 1746.

Keionta Hagens

Keionta Hagens, Pro Se
Reg. No. 31585-007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

KEIONTA HAGENS,      :

       Plaintiff,   :

    v,    :   Civil Action No. 1:05-cv-01917

           :   (C.K.K.)

CORRECTIONS CORPORATION :

OF AMERICA, et al.,   :

    Defendants.    :

AFFIDAVIT OF KEIONTA HAGENS

The affiant, Keionta Hagens, under penalty of perjury, depose and says:

1.) I am the same Keionta Hagens, Reg. No. 31585-007, in the above-captioned matter.

2.) While confined at the Correctional Treatment Facility in Washington, D.C., I submitted several informal and formal grievances concerning an incident which took place on April 1, 2004, at the CCA-owned Correctional Treatment Facility.

Affidavit of Kirata Hagens
June 20, 2006
Page two of three

3.) In this regard, I received copies of the investigation reports concerning the incident.

4.) The Internal Affairs Division had verified the allegations that were set forth in my complaints.

5.) I was transferred from C.T.F. within a week of receiving the responses. I attempted to get the forms to appeal to a higher level, due to my belief that I should have been provided documentation as to the sanction(s) imposed on the violators, However, I did not feel that an appeal was needed because my complaints were verified. I believed that there was nothing more I could accomplish through administrative remedies.

6.) Had my attempts to obtain the proper forms to appeal been answered I would appealed the decision

AFFIDAVIT OF KEIONTA HAGENS

JUNE 20, 2006

PAGE THREE OF THREE

7.) Any allegations that I did not attempt informal or formal resolution of the matter are FALSE.

8.) Similarly, I did not resolve the matter informally, or indicate that I did not wish to Appeal the response.

FURTHER THE AFFIANT SAYETH NOT.

/s/ Keionta Hagens

KEIONTA HAGENS
REG. No. 31585-007
USP - B's SANDY
P.O. Box 2068
INEZ, KY 41224

_____, June 21, 2006
AUTHORIZED BY THE ACT OF
JULY 7, 1955, AS AMENDED,
TO ADMINISTER OATHS
18 U.S.C. 4004

A - P - P - E - N - D - I - X

INDEX:                                          PAGE:

March 20, 2006, letter to
  Clerk of the Court                              1.

May 17, Grievance Form                           2.

May 23, Inmate Request                           3.

Undated Inmate Request                           4.

May 25, Memorandum                               5.
  From Larry Bynum

Release Form, May 24, 2004                        6.

June 3, 2004, Memorandum                         7.
  From Barbara Hart

June 3, 2004, Investigation                       8.
  Information

Property Report                                   9.

June 4, 2004, Memorandum                         10.
  From Barbara Hart

June 1, 2004, Memorandum                         11.
  From Don Paul

EXHIBIT A

DONALD HATEN
REG. NO. 11585007
USP-BIG SANDY
P.O. BOX 2068
INEZ, KY 41224

March 20, 2006

RECEIVED

Clerk of the Court
UNITED STATES DISTRICT COURT
FOR the DISTRICT OF COLUMBIA
333 Constitution Avenue, N.W.
Washington, D.C. 20001-2866

MAR 23 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Re: Keionta Hagens v. Connections Corporation of America, etd.
Civil Action No. 05-1917 (CKK)

Dear Clerk:
On March 13, 2006, I mailed a letter to
the Court and served a copy upon the defen-
dants, in reference to the above-captioned civil
suit, and any others pending wherein the plain-
tiff is Keionta Hagens, Fed. Reg. No. 31585-
007.
At that time I did not have the case
number for any of these cases. Since that
time I did receive the above case number
and I write to provide the same. I would
also like to inform the Court that Mr.
Hagens is still confined in the Special
Housing Unit (SHU) and under the conditions
set out in the March 13, letter.
I would greatly appreciate it if you
would take judicial notice of these facts
and stay the proceedings, or any other
relief you deem to be fair and equitable,
until Mr. Hagens is able to inform the
Court that the disability has been lifted.
Thank you for your kind considera-
tion of the above.

(1.)

Clerk
U.S. District Court
for the D.C. Circuit
March 20, 2006
Page two of two

Respectfully submitted,

DONALD G. HATCH
Reg. No. 11999-007
USP-Big Sandy
P.O. Box 2068
Inez, KY 41224

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I mailed a copy of the foregoing letter to the defendants by placing a copy thereof in the legal mailbox, postage prepaid, addressed to Legal Counsel, Corrections Corporation of America, 10 Burton Hills Boulevard, Nashville, Tennessee, 37215, this 20th day of March, 2006.

DONALD J. HATCH

Executed this 20th day of March, 2006, at Inez, KY, pursuant to 28 U.S.C. § 1746.

DONALD J. HATCH
Reg. No. 11999-007

Exhibit B
Not in SMU-A

Grievance No: 872

Form 14-5A -- For Official Use Only

**COMPLAINT RESOLUTION/GRIEVANCE FORM**

Name (Print): HAYES    Keionta    Shawn Q.

Number: 254-792    Housing Assignment: SMU-A

INFORMAL RESOLUTION ATTEMPTED?    Yes _____    No _____    MAY 17 PM 2:01
NAME OF STAFF CONTACTED _____

I AM still in SMU-A My TiME WAS upon MAY 14 2004.
That was on a Birday I A 611 Body mad about getting some
Time in this fuck upup Jail for some shit I didn't even do
You cust lying ASS Capt. that do something wrong. And then
lying on the person like when Capt londan and Capt maye
Jim5 me with han cuffs by hine my back in sick my room And
Then say I ASSAult one of them That's fuck the DJ

Inmate/Resident's Signature: _____    Date Submitted: _____

**GRIEVANCE OFFICER'S REPORT**

After our meeting You have been placed on Admin Seg due
to the incident You were involved in, and this being
convicted of Assault.

**GRIEVANCE OFFICER'S REPORT**

Your continued detention is SMU resulted
in your having been placed on administrative
segregation after you served your D/S time

Grievance Officer's Signature: _____    Date: 5/21/04
Inmate/Resident's Signature (upon receipt) Keith Hagens    Date: 5-21-04

APPEAL: Yes _____    No ✓    STATE REASON (S) FOR APPEAL: _____

**WARDEN/ADMINISTRATOR'S RESPONSE:**

Warden/Administrator's Signature: _____    Date: _____
Inmate/Resident's Signature (upon receipt) Keionta Hagens    Date: _____

White Copy - Inmate Copy    Yellow & Pink - Grievance Committee    Revised 02/01/02

EXHIBIT B

2.

CORRECTIONAL TREATMENT FACILITY

(EXHIBIT 4.)

TO: DCC      DATE: 5-23-06      SMU-4

FROM NAME, FIRST LAST: Keionta Hagens      DCDC #: 284-772

PLEASE INDICATE BY CHECK (✓) THE NATURE OF REQUEST

( ) CLASSIFICATION OR RECLASSIFICATION
( ) PERSONAL OR FAMILY PROBLEM(S)
( ) VISITING LOG
( ) NOTARY
( ) ESCORTED TRIP
( ) CANTEEN
( ) INTERVIEW COUNSELING/APPTS.

( ) PAROLE
( ) CUSTODY REVIEW
( ) LEGAL CALL
( ) SENTENCE STRUCTURE
( ) SQUAD CHANGE
(X) OTHER

COMMENTS: I WAS ASSault by Two Capt They NAME is MAye and landon with hand cuffs on me be bin my black I Suff INjuries to my Neak ribs rehiss, I did not Assult nooti one they is liying on me

ACTIONS TAKEN/REMARKS

D.C. DEPT OF CORRECTION
CORRECTIONAL TREATMENT FACILITY
LAW LIBRARY
1901 E STREET SOUTHEAST
WASHINGTON, D.C. 20003

③

CORRECTIONS CORPORATION OF AMERICA
CORRECTIONAL TREATMENT FACILITY

### RESIDENT REQUEST SLIP

TO: _MS Barbara R. Hart_    DATE: _____    UNIT: _SMU-A_

FROM: (Name: Last, First) _Hagens Keith  SO_    DCDC= _280 29?_

PLEASE INDICATE BY CHECK ( ) THE NATURE OF REQUEST

( ) Classification or Reclassification    ( ) Parole
( ) Custody Review    ( ) Personal or Family Problem (s)
( ) Visiting List    ( ) Legal Call
( ) School    ( ) Sentence Structure
( ) Escorted Trip    ( ) Squad Change
( ) Canteen    (X) Other (Specify)
( ) Interview Counseling/Appts.

Comments: _Cpt# Mays Lt. Capt Carvian took my Property_
_like is was Contraband my personal property They didn't give_
_me a 30 day for some body come pick up my property Then my Nieds_
_I dpropp off my COO visses and misc of paper they do to_
_put it that my car to ride. But you taken my legal_
_pay give my DS to my bed my bed my Brother pay Lu them_
_Before he die my Photos of my boys one hard die you no I'll_
_that fill I'll mail them to te need I'll be mean to me_

Actions Taken Remarks _____

(4.)

# Memorandum

**To:**    **Barbara Hart**

        **Contract Monitor**

**From: Larry Bynum**

        **Chief of Security**

**Date: 05/25/2004**

**Re:**    **Inmate Hagens, Keionte #284792**

---

**This memorandum is in reference to a grievance/ claim filed by inmate Hagens, K. #284792 missing commissary. Attached you will find a release form indicating the acknowledgement receipt of $50.00 worth of commissary. Therefore, showing that this claim has been resolved.**



FORM 14-6B
Revised 02/01/02

## RELEASE FORM

I, _Keion to Hagens_ (inmate's name), having filed a claim

for lost belongings on _____ do hereby acknowledge receipt

of: _$50ᵉᵉ Worth of Commissary_ _____

_____

_____

_____

in full settlement, compromise and discharge of any and all liability which exists or

which might exist, and do hereby release and discharge CCA and any and all of its

agents, representatives, officers, and employees from any and all liability for

compensation, damages and all other amounts, if any, which might be due me by

reason of the loss reported on the above date (whether the liability be damages, tort, or

otherwise).

Witnesses:                               Signature of Inmate:

_C. Peatros X_____              X _Keion to Hagens_____

_Carla Peatros_____             Date Signed:

                                        _5-29-01_____

Copy to: Inmate
         Inmate File
         Business Office

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF CORRECTIONS

Office of the External Confinement
& Monitoring Administration



## <u>MEMORANDUM</u>

TO:       Keionta Hagens
          DCDC 284-792

FROM:     Barbara A. Hart
          Contract Monitor

DATE:     June 3, 2004

SUBJECT:  Response Letter

---

This memorandum is in response to your letter in reference to your property and alleged use of force. The property issue has been resolved as denoted by your signature on the attached "Release Form". The Internal Affairs is in the process of investigating your allegations of use of force.

7.

---

**From:**      Fred Figueroa
**To:**        barbara.hart@dc.gov
**Date:**      06/03/2004 02:04:55 PM
**Subject:**   Investigation on Inmate Hagens # 284792

I have sent this to Charles Martin. I will advise you of the corrective action that is to follow.


Fred Figueroa
1901 E Street SE
Washington, DC 20003
Work 202 698 3006
Fax   2o2 698 3301
fred.figueroa@correctionscorp.com


**CC:**        Leggon, Rose



property issued resolved

Internal Affairs is in the process of investigating your allegations of use of force.

9.

*Exhibit G*

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF CORRECTIONS

Office of the External Confinement
& Monitoring Administration



## MEMORANDUM

TO:        Keionta Hagan
           289-792

FROM:      Barbara A. Hart
           Contract Monitor

DATE:      June 4, 2004

SUBJECT:   Investigation

___

Inmate Hagan this is in response to your May 14, 2004 inquiry in reference to an allegation of excessive use of force by Captain Dale London.

Internal Affairs (CCA/CTF) investigated your allegation. Warden Figueroa is imposing corrective/adverse action against Captain London.

cc:  Warden Figueroa





# CCA

## CORRECTIONS CORPORATION OF AMERICA
Correctional Treatment Facility

---

### *Memorandum*

**TO:**       F. E. Figueroa, Warden

**FROM:**   Don Paul
              Internal Affairs Investigator

**DATE:**    1 June 2004

**RE:**       Keionta Hagens, DC-DC 284792

**SUBJECT:**   Use of Force Review

---

Reporting investigator was directed to review a use of force which occurred on Thursday, April 1, 2004. Two staff members were primarily involved with physical intervention, namely Shift Supervisor James Mayes, and Shift Supervisor Dale London. The affected inmate that refused to comply with directives and resisted restraints was identified as Keionta Hagens, DC-DC 284792. Research suggests Hagens has an explosive history of assaults on correctional staff. Color photographs revealed latent hand marks about the neck of Hagens after he stopped resisting and was taken to medical, which became the focus of this inquiry. The narrative of the Incident Report 5-1A did not support or clearly present how those injuries occurred. The fact that Mayes was assaulted by Hagens was not disputed.

Shift Supervisor James Mayes was interviewed in Internal Affairs responsive to this incident. Mayes recalled that this use of force took place during the facility wide shakedown on April 1, 2004. He stated that Hagens became hostile and attacked him after being told that he would not receive certain property which had been confiscated as contraband. According to Mayes, Captain London was nearby and came to his assistance when Hagens jumped and struck him in the upper chest area. Mayes was asked specifically how the hand marks occurred on the neck of Hagens. Mayes stated that London did place his right hand on the neck of Hagens, and explained action that in the narrative of the report. Mayes was asked how long London left his hand on Hagens' neck. Mayes could not recall. Mayes was then shown the photographs of Hagens in medical taken some twenty minutes after the use of force occurred. The photographs clearly indicate possible choking. Mayes was asked to discuss where in CCA Policy 9-1 or PPCT training that use of sustained hand holds on the neck of a resisting subject were authorized or permitted. Mayes stated he was not sure if choke holds were authorized. Mayes was asked if London submitted an incident statement (5-1C) in reference to this use of force. Mayes could not recall. Mayes was asked if he knew who prepared the incident report on the use of force with Hagens. Mayes stated he thought London did.

Shift Supervisor Dale London was interviewed in Internal Affairs responsive to this incident.



Chief of Security Larry Bynum was present and observed. London was advised of the nature of the use of force review, specifically focusing on the hand marks about Hagens' neck and throat. Additionally, the inmate alleged that he had been choked during the confrontation. London was shown the photographs of Hagens taken in medical some twenty minutes after the incident occurred. The photographs clearly indicate possible choking occurred. London was asked if he submitted an incident statement (5-1C) in reference to this use of force. London stated that he did not, but had explained it in the narrative of the report. It was pointed out that Assistant Shift Supervisor Ricardo Rich was typed on the 5-1A Incident Report as the person preparing the report, but the language of the report suggested that London was the author. London admitted that he did prepare most of the narrative on the Hagens use of force (5-1A). In consideration of photographs showing a marked hand print about the neck and throat of Hagens, London was directed to describe in detail and explain how the incident occurred. London stated that during the shakedown, Mayes was assaulted by Hagens. In the process of trying to gain control of the unruly inmate, London stated that he attempted to grab hold of Hagens' shirt top, but his right hand slipped and ended up on Hagens' neck. When asked how long he held onto Hagens' neck, London initially stated he let go immediately. Photographs showing finger marks on Hagens' neck and discoloration about the trachea area was again presented for London to examine. It was pointed out that photographs of Hagens' neck and throat were made some twenty minutes after the incident, and latent markings and discoloration should not be as pronounced if London had immediately released his grip as claimed. London then admitted that he held Hagens by the neck several seconds and took Hagens down to the floor with his hand gripped about the neck. London was asked where in CCA Policy 9-1 or PPCT training that use of sustained hand or choke holds on the neck of a resisting subject were authorized or permitted. London shrugged his shoulders and did not answer. London was asked whether or not the resistance from Hagens was sufficient to support use of deadly force as a means of intervention. London stated that grabbing Hagens by the neck was not intentional. London was again asked if physical resistance by Hagens was sufficient to justify use of deadly force by choking. London again stated that grabbing Hagens by the neck was not intentional and he did not mean to choke him. It was pointed out for the record that London had excluded specific details of his role in the use of force, and neglected to submit a 5-1C on the incident. The 5-1A on the incident also failed to mention any of the obvious injuries to the neck/throat area of Hagens at item 5, page 4. For the record, London was also informed that CCA does not authorize the use of choke holds anywhere in CCA Policy 9-1, Use of Force, nor are application of choke holds by hands alone taught as part of PPCT training. London was directed to submit a thorough 5-1C incident statement addressing his involvement in the use of force with Hagens.

Assistant Shift Supervisor Ricardo Rich was interviewed responsive to the Hagens incident report on the use of force. Rich admitted that he did not write the narrative contained on the initial 5-1A packet, and was not very familiar with the specific facts as cited. Rich believes London prepared this report, and most of the incident reports from the shakedown.

In conclusion, the facts of this inquiry suggest that a use of force was made unavoidably necessary by undisputed aggressive and assaultive behaviors initiated solely by Keionta Hagens without warning. Specifically Hagens violently struck Shift Supervisor Mayes in or about the upper chest. However, nothing in the record supports using an unauthorized choke hold to intervene and maintain control of Hagens' combative behaviors. Through his own conduct, Dale London failed to be completely truthful and honest when reporting his role in this use of force, and neglected to submit a 5-1C incident statement in the follow up investigation until directed to do so by Internal Affairs. During the interview, London was initially evasive and minimized placement of his hand on Hagens' neck, which inadvertently resulted in Hagens being choked during the scuffle. Under the scope of CCA Policy 9-1 on Use of Force, use of deadly force by choke hold or the equivalent thereof was not a supported intervention method based on the facts present within this incident. Failure by London to accurately report involvement in a use of force constitutes violation of CCA Policy 5-1 on Incident Reports, and



CCA Policy 3-3 on Business Ethics and Conduct.

*13.*

I have sent this to Charles Martin. I will advise you of the corrective action that is to follow.


Fred Figueroa
1901 E Street SE
Washington, DC 20003
Work 202 698 3006
Fax   2o2 698 3301
fred.figueroa@correctionscorp.com



Tennessee
Headquarters
10 Burton Hills
Nashville, TN Blvd
37215

Charlie
Martin

